UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| **DEMONDRA BURNETT, Jr.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | No.: 18-cv-1224-JBM |
| ) | |
| . DRONENBERG, et al., ) | |
| ) | |
| **Defendants.** ) | |

## MERIT REVIEW – THIRD AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files a third amended complaint under § 1983 alleging the use of excessive force, a humiliating strip search, inhumane conditions of confinement, state law assault and battery, and state law intentional infliction of emotional distress at the Pontiac Correctional Center ("Pontiac"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

On July 20, 2017, Plaintiff was held on 1 Gallery of the Pontiac North Cell House, which the Court understands to be a disciplinary segregation unit. Plaintiff claims that on that date, a tact team was sent to his cell in response to "flooding." Plaintiff neglects to reveal, as he did in his prior complaints, that that he is seriously mentally ill and flooded the cell himself.

1

The tact team entered the cell and ordered Plaintiff to cuff-up. Plaintiff claims that he complied but, notwithstanding, Defendant Dronenberg rushed into the cell and smashed Plaintiff's face onto the floor which was dirty due to the overflowed toilet. Defendant Frazier shackled Plaintiff's legs and while this was being done, Defendant Caudle allegedly stomped on Plaintiff's head. Defendants Frazier and Caudle thereafter escorted Plaintiff to the holding tank, bending and applying pressure to Plaintiff's handcuffed wrists, causing him to cry out. Once inside the holding tank, Defendant Frazier threatened Plaintiff and applied additional pressure to his wrists.

Plaintiff was stripped of his clothing and Defendant Tutoky used a flashlight to move and lift Plaintiff's scrotum and spread his buttocks. Plaintiff identifies this as a sexual assault, asserting that Defendant clearly did not have a legitimate penological reason for so doing.

After the strip search, Defendants Frazier and Caudle returned Plaintiff to his cell. Once again, they applied extreme pressure to Plaintiff's handcuffed wrists, even though he was not resisting, causing him to cry out in agony. When they arrived at the cell, Defendants Frazier and Caudle slammed Plaintiff's face into the steel door.

Defendant Tutoky thereafter removed Plaintiff's personal items, bedding and toiletries from the cell. Plaintiff asserts that this was done without due process of law. Plaintiff claims that he was left in the cell for several days without water, toiletries, food, cleaning supplies, or medication. He asserts that he was so mentally disturbed by this, that he attempted to hang himself and was placed on suicide precautions.

**ANALYSIS**

Plaintiff pleads enough at this stage to state a colorable claim that Defendants Dronenberg, Frazier and Caudle exerted unjustified excessive force against him. He also

sufficiently pleads a state law claim of battery. That is, that Defendants "intentionally or knowingly without legal justification" caused bodily harm to plaintiff or made or made physical contact of an insulting or provoking nature. 720 ILCS 5/12–3(a).

Plaintiff fails to state a claim that the strip search by Tutoky was unconstitutional. In determining whether a bodily search violates the Constitution, a court must balance the plaintiff's constitutional rights with the security concerns of the institution, the scope of the intrusion, the manner in which the search is conducted, the justification for the search, and the place at which the search is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Instead, the Constitution prohibits only the unnecessary and wanton infliction of pain, and thus forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Id.* at 939 (citation omitted).

Here, Plaintiff had committed a disciplinary infraction in flooding his cell. He was removed from the cell and a visual body inspection was done. While Defendant Tutoky used a flashlight to move Plaintiff genitals for inspection, there is no indication that this caused the search to be especially humiliating. In other words, the Court does not believe that the strip search would have been less unpleasant had Defendant Tutoky used a gloved hand rather than the flashlight. The strip search of a prisoner becomes unconstitutional only where maliciously motivated, unrelated to institutional security, and totally without penological justification. *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004); *Calhoun,* 319 F.3d at 939. As the strip

search claim is dismissed, Plaintiff's related claim that the strip search resulted in an intentional of infliction of emotional distress is also dismissed.

Plaintiff further alleges that Defendant Tutoky removed Plaintiff's personal items from his cell without due process of law. Plaintiff does not allege, however, that he was not provided a post-deprivation hearing. It is not enough to establish merely a deprivation of property, one must also establish that the property was taken without notice and the opportunity for hearing. *See Ellis v. Sheahan*, 412 F.3d 754, 756 (7th Cir. 2005). Plaintiff does not make such a claim here and, accordingly, the due process claim is DISMISSED.

Plaintiff also claims that he was left in a cell for several days without water, toiletries, food, cleaning supplies or medication. He indicates, also, that he attempted to hang himself and was placed on suicide precautions during this time. The Court is aware that inmates on suicide precautions are, of necessity, placed in cells devoid of personal property and creature comforts. *See Williams v. Schmidt*, No. 14-487, 2019 WL 1046167, at *2 (W.D. Wis. Mar. 5, 2019). "Suicidal inmates are removed from regular cells, isolated, and placed in constantly-illuminated cells for their own protection, so that staff can monitor them more closely. Clothing, blankets, eyeglasses, hygiene items, and other property items are prohibited to reduce the inmate's ability to engage in self-harm."

While Plaintiff also asserts that he did not have access to food or medication, it is unclear whether Plaintiff is referring to food and medication kept in his property box, or alleging that he was not fed or provided necessary medication. Plaintiff does not provide sufficient detail to plead these claims. As this is Plaintiff's fourth attempt, the Court is not inclined to give him further opportunity. As the allegations asserting a lack of food and medication are unduly vague,

4

and as they do not identify whom Plaintiff holds responsible for these conditions, they are dismissed.

Plaintiff's only allegation against Defendant Toppel is that he asked whether Plaintiff wished to be seen by a medical technician. When Plaintiff answered in the affirmative, Defendant Toppel called a med tech to see him. This fails to state a constitutional violation against Defendant Toppel as, to hold someone liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation, which was not the case here. *Pepper v. Village of Oak Park,* 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Defendant Toppel is DISMISSED.

Plaintiff names Defendant Sorensen in the caption but asserts no claims against him. "However, merely naming a defendant in the caption is insufficient to state a claim." *Jones v. Butler,* No. 14-00846, 2014 WL 3734482 *2 (S.D. Ill. July 29, 2014) citing *Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir.1998). Defendant Sorensen is DISMISSED.

**IT IS THEREFORE ORDERED:**

1.    This case shall proceed on the claims that Defendants Dronenberg, Frazier and Caudle exerted unconstitutional against Plaintiff. All other allegations are DISMISSED for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Defendants Toppel and Sorensen are DISMISSED. The Doe Defendants #1- #5 are DISMISSED as Plaintiff has identified the former Doe Defendants in his third amended complaint. Warden Melvin is also DISMISSED as he was named a Defendant in the Court's May 29, 2019 order merely to aid in identifying the Does. No other claims will be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15.

2. Plaintiff's motion for status [35] is rendered MOOT by this order.

3. The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

4. If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

6. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

7. Once counsel has appeared for a Defendant, Plaintiff need not send copies of

filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

8. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

9. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

4/16/2020
ENTERED

s/Joe Billy McDade
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE